**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.** |
| | ) | **1:18-cv-05278-SCJ** |
| **GWINNETT COUNTY SCHOOL** | ) | |
| **DISTRICT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A TEMPORARY
<u>RESTRAINING ORDER AND PERMANENT INJUNCTION</u>**

COMES NOW the Gwinnett County School District ("the School District"), the Defendant in the above-referenced case, and pursuant to the Court's August 21, 2020 Order, files its Response in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Permanent Injunction.

## I.     <u>INTRODUCTION</u>

Plaintiff's Motion is a highly improper and unfounded attempt to force the destruction of evidence which is likely to prove relevant in this case. It is a disingenuous effort to misapply the law which has been carried out in an untoward manner. The Court should not allow this ploy to succeed.

1

Plaintiff has known for over five years that the photographs in question[1] exist and that the School District police officials have copies of the photographs. Despite this knowledge – and without discussing this matter with counsel for the School District (as is required by the local rules) – Plaintiff chose to file its Motion at 11:18 p.m. last Thursday night (August 20, 2020). Such tactics speak for themselves.

Plaintiff's Motion has no legal merit. It accuses the School District, its police officials and its lawyers of violating state and federal child pornography statutes which are clearly inapplicable to the facts of this case. The statutes are aimed at pedophiles, not police officials, as evidenced by the specific exception for law enforcement officials in the state statute and the legislative history of the federal statute. Tellingly, Plaintiff cites no legal authority in support of her Motion other than the statutes themselves. If the Court were to accept Plaintiff's bizarre interpretation of the statutes, school police officials would be hopelessly hamstrung in their efforts to investigate allegations of sexual assaults.

The photographs were produced by counsel for the School District to Plaintiff alone in response to Plaintiff's specific request for the complete file of the School District Police Department. The photographs, which were taken by the Plaintiff

---

[1]     The School District does not concede that the photographs at issue are pornographic, but will assume that they are for purposes of this Motion.

2

herself and sent to a fellow student at Peachtree Ridge High School, were produced pursuant to the protocols contained in the Court's Consent Protective Order in this case.

Not content to merely file a spurious motion attempting to eliminate potentially damaging evidence in this case, Plaintiff's counsel recklessly contacted the Georgia Bureau of Investigation ("GBI") to accuse the School District, its police officials and its lawyers of criminal activity. Such action is unprofessional, likely violative of the Canons of Professional Ethics and possibly a criminal act in itself.

In sum, the Court should not endorse or allow such conduct by Plaintiff and her counsel. The School District asks the Court to deny Plaintiff's Motion, to direct Plaintiff to contact the GBI to inform them that no criminal statutes have been violated and to sanction Plaintiff's counsel for their impermissible conduct.

## II.  **BACKGROUND**

### A.  **Plaintiff's Recitation Of The Facts Is Inaccurate**

Plaintiff's Motion is premised on her gross and repeated mischaracterization of Officer David Sokol ("Officer Sokol") as merely a "school employee" (see, e.g., Doc. 83-1, at p. 7; Doc. 85, at p. 2), when in fact Officer Sokol and Officer Tony Lockard ("Officer Lockard") are sworn, P.O.S.T.-certified law enforcement officers who are members of the School District's police department.   This distinction is

critical because both the federal and Georgia child pornography statutes cited by Plaintiff authorize law enforcement agencies and their employees to possess, review and use such materials for law enforcement purposes.  Officer Sokol and Officer Lockard obtained the photographs at issue during the course of their criminal investigation of Plaintiff's allegations that another student at Peachtree Ridge High School (referred to as "MP") forced her to perform oral sex on him.

Plaintiff's Motion attempts to convey her purported shock and astonishment that the School District's police department had these photographs in its possession. The reality, however, is that the School District's general counsel informed Plaintiff's counsel[2] of the existence of these photographs and the fact that they were in the custody of the School District's police department more than five years ago. To the extent that Plaintiff contends that the School District police department's possession of these materials constitutes a violation of federal and Georgia child pornography laws, she should have taken corrective action at that time.   Plaintiff, however, did not do so.

---

[2] The School District's general counsel spoke with Plaintiff's attorney at the time, Cari Simon.  At the time, Ms. Simon was an attorney at Bode & Fierberg, LLP, a predecessor firm of Douglas E. Fierberg.  Ms. Simon remains as an attorney with the current Fierberg firm (The Fierberg National Law Group, PLLC), which is the counsel of record for Plaintiff in this case.

Instead, Plaintiff waited more than five years to assert that position, while the parties are in the midst of numerous depositions and other extensive discovery activities.  Indeed, Plaintiff filed this Motion just two days after two School District witnesses (including one of the two female hearing officers who has presided over more than 6,000 student disciplinary hearings over the course of more than 30 years) provided compelling deposition testimony as to why they concluded that the oral sex between Plaintiff and MP was consensual.   Plaintiff also filed this Motion just two days after her counsel expressed her general satisfaction with the School District's document production (other than one issue not related to the instant Motion) to the School District's outside counsel.  Needless to say, Plaintiff's counsel did not raise with the undersigned counsel the concerns set forth in the instant Motion   Thus, Plaintiff's filing of the instant Motion appears to be an unfortunate ambush tactic in hopes of gaining some sort of litigation advantage or to divert attention from the merits of the case.

Plaintiff's Motion also omits the fact that Plaintiff requested in discovery all documents concerning the School District's police department's investigation of Plaintiff's allegations.  The photographs at issue were responsive to Plaintiff's document request, and the undersigned counsel accordingly produced them to Plaintiff's counsel (and <u>only</u> to Plaintiff's counsel) as counsel for the School District,

whose police department was authorized to possess these materials.  Moreover, the photographs at issue were produced pursuant to the Consent Protective Order entered by the Court.  Contrary to Plaintiff's contentions, the terms of that Consent Protective Order automatically designated the photographs at issue as Confidential Information, and thus the undersigned counsel were not required to re-designate them as such.   Accordingly, the School District police department's possession of the materials and the School District's counsel's production of them to Plaintiff pursuant to her document request and the Consent Protective Order were lawful and appropriate.

### B.     Administrators And Hearing Officers Conclude That Oral Sex Between Plaintiff and MP Was Consensual

On February 5, 2015, Plaintiff complained to school officials that another student at Peachtree Ridge High School ("PRHS") had forced her to perform oral sex on him the previous day after school in the school broadcast newsroom.  (Doc. 22 at pp. 2-3).  School officials conducted a thorough and prompt investigation and concluded that the oral sex between Plaintiff and MP was consensual and that both students therefore violated Rule 9(g) of the student code, which prohibits students from engaging in oral sex on school property.  (Id. at pp. 3-8).   School officials

informed both students that a disciplinary hearing on this charge would be held and suspended her from school in the meantime.  (Id. at p. 8).

The disciplinary hearing took place on February 18, 2015, during which both Plaintiff and MP were represented by counsel, testified and were cross-examined. (Id. at pp. 8-11).   Two of the school administrators who participated in the investigation also testified and were cross-examined, and additional witnesses called by the School District, Plaintiff and MP also testified and were cross-examined. (Id.). After closing arguments by counsel for Plaintiff, MP and the School District, two very experienced female hearing officers concluded that the oral sex between Plaintiff and MP was consensual.  (Id.).   Both students were suspended for the remaining two days of that week and allowed to return to school on February 23, 2015.

C.      **School District Police Department Continues Its Criminal Investigation And Obtains Nude Photographs Of Plaintiff That Plaintiff Sent To A Previous Boyfriend**

Although the student discipline proceedings at PRHS were concluded, and Plaintiff and MP returned to school from their suspension on February 23, 2015, the School District's police department continued its criminal investigation of Plaintiff's allegations.   This criminal investigation continued intermittently during the remainder of 2015 and in 2016.  During the course of the School District police

department's criminal investigation, it obtained (with MP's consent) his cell phone and obtained from another law enforcement agency a forensic analysis of MP's cell phone. (Declaration of Tony Lockard, at ¶ 5) (attached as Exhibit 1).   The School District police department also obtained samples of a substance found on the carpet in the RVN room and a DNA sample provided (voluntarily) by MP and obtained results from the Georgia Bureau of Investigation lab, which found that MP's semen was present in the RVN room. (Id. at ¶ 6).   The School District police department interviewed MP concerning this development, but it concluded that this development did not shed any additional light as to whether the oral sex between Plaintiff and MP was consensual. (Id. at ¶ 7).

During the School District police department's criminal investigation, MP provided information to Officer Lockard indicating that Plaintiff may have transmitted nude photographs of herself to her boyfriend at the time ("RH") at some point prior to the incident in question, and that Plaintiff and RH were in a sexual relationship. (Id. at ¶ 8).   Another school law enforcement officer, Officer Sokol, interviewed the individual identified by MP (RH), obtained screen shots of several nude photographs of Plaintiff that she reportedly sent to RH on RH's cell phone and deleted the images from RH's cell phone. (Id. at ¶ 9).   These photographs were secured in the School District police department's evidence room. (Id. at ¶ 10).   Only

8

Officer Lockard and Officer Sokol have seen the photographs, and no School District employee outside the School District's police department has seen the photographs. (Id. at ¶ 11).

All information and documents obtained during the course of the School District police department's investigation were provided to the Gwinnett County District Attorney's Office for its determination as to whether bring criminal charges against MP. (Lockard Decl., ¶ 12).   During the course of the School District police department's criminal investigation, Officer Lockard communicated frequently with the Gwinnett County District Attorney's Officer investigator, Christa Kendrick, regarding the case. (Id. at ¶ 13; see also Doc. 83-4).   To the School District police department's knowledge, the Gwinnett County District Attorney has not made a final decision as to whether or not to bring criminal charges. (Lockard Decl. at ¶ 14).

**D.    School District's General Counsel Informs Plaintiff's Counsel On April 21, 2015 that School District Police Department Has Nude Photographs Of Plaintiff And Has Secured Them**

As a courtesy, the School District's general counsel, Victoria Sweeny, informed Plaintiff's counsel on April 21, 2015 of the nude photographs of Plaintiff on RH's cell phone and that the photographs were in the possession of the School District's police department. (Declaration of W. Creighton Lancaster, at ¶ 3, attached hereto as Exhibit 2).   Ms. Sweeny explained to Plaintiff's counsel that the School

District was not investigating the report as a student discipline issue, but rather was letting Plaintiff's counsel know about this situation as a courtesy (rather than Plaintiff's parents, as would have been the ordinary practice). (Id. at ¶ 4).

**E.    Plaintiff Files This Lawsuit And Requests Production Of Documents From School District Police Department's Investigation File**

Plaintiff filed this lawsuit on November 16, 2018. (Doc. 1).  The School District filed a motion to dismiss (Doc. 22), which the Court denied on August 22, 2019. (Doc. 46).  Thereafter, the School District filed its Answer and discovery ensued.

On November 4, 2019, Plaintiff served her Requests for Production of Documents.  Request No. 51 sought

> All documents, including, but not limited to, correspondence and communications, concerning law enforcement's or any other State, municipal, or Federal entity's investigation of any incident(s) of student-against-student sexual harassment, sexual assault, sexual battery, sexual violence, inappropriate touching or sexual misconduct in the District, including but not limited to MP's sexual harassment against Jane Doe or any other student, that took place or was reported to have taken place from January 1, 2005 through the end of the 2014-15 school academic year.

(Exhibit 3, attached).  On December 20, 2019, the School District asserted various objections but agreed to produced responsive documents, subject to entry of a

consent protective order limiting the dissemination and use of the records. (Exhibit 4, attached).

**F.      School District Produces Documents Requested By Plaintiff From Police Department Investigation File, Including Photographs At Issue, Pursuant To Consent Protective Order**

Because the School District police department's investigation file concerning Plaintiff's allegations against MP was responsive to Plaintiff's Request No. 51, the School District's outside counsel requested the investigation file from the School District's police department.

The School District's outside counsel received a very large volume of documents and these documents were uploaded to a database and document production system called Eclipse.  The Eclipse database requires passwords for access, and only the undersigned counsel and three paralegals were provided with passwords to the Eclipse database for this case.  The School District's outside counsel began the long process of reviewing tens of thousands of documents around the middle of March 2020 and identifying responsive documents.

On March 16, 2020, the Court entered a Consent Protective Order. (Doc. 65). The Consent Protective Order provided for the production of confidential education records for Plaintiff, MP and other students, as well as Plaintiff's medical and psychological records.  (Id. at ¶¶ 2-7).  The Consent Protective Order also provided

that the School District's law enforcement unit may possess juvenile law enforcement records subject to discovery in this litigation and stated, "the District is authorized to disclose and produce any such law enforcement records in discovery in this litigation" and that all such records "shall be treated as Confidential Information pursuant to this Order." (Id. at ¶ 8).  In addition, the Consent Protective Order provides that information identified as "Confidential Information" need not be designated as "Confidential Information" by taking the steps set forth in paragraphs 10(a) and 10(b). (Id. at ¶ 10(c)).  The Consent Protective Order limits the dissemination of information identified as "Confidential Information" to attorneys for the parties in this case and their employees, the parties, and other specific categories of people. (Id. at ¶¶ (13(a) – 13(h)).

The School District's outside counsel continued to receive many additional documents from the School District, including numerous emails to be searched for responsive documents.  There are currently approximately 115,000 documents on the Eclipse database.  The School District's outside counsel produced a large volume of documents, including the photographs at issue, to Plaintiff's counsel on July 16,

2020.   The photographs at issue have not been provided to anyone other than Plaintiff's counsel.[3]

### III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The School District Police Department Lawfully Possessed The Photographs At Issue

Alleging that the District violated state (O.C.G.A. § 16-12-100) and federal law (18 U.S.C. § 2252A) by possessing and then producing materials that constitute child pornography, (Doc. 83-1, p. 8), Plaintiff conveniently ignores law enforcement's role in the investigation and elimination of conduct prohibited by these laws and the statutory provisions authorizing such conduct. Indeed, while O.C.G.A. § 16-12-100(b) criminalizes, among other things, the reproduction, publishing, and distribution of child pornography, the statute expressly states that such section "shall not apply to ... [t]he activities of law enforcement and prosecution agencies in the investigation and prosecution of criminal offenses[.]" O.C.G.A. § 16-12-100(d)(1).

---

[3] Creighton Lancaster, an attorney with the law firm that serves as the School District's general counsel, has never seen the photographs at issue and did not know that they were contained in the School District's police department investigative file produced in this matter until he received notification of Plaintiff's filing of this Motion. (Lancaster Decl. at ¶¶ 1-2, 5).

This language clearly authorizes law enforcement such as School District police department Officers Lockard and Sokol to possesses and handle such material in the course of fulfilling their law enforcement duties. Similarly, although the federal statute does not include the specific exception that the Georgia statute does, it clearly contemplates law enforcement review and possession of the same materials. See 18 U.S.C. § 2252A(d)(2) which contemplates possession of materials by law enforcement agencies ("It shall be an affirmative defense to a charge of violating subsection (a)(5) that the defendant . . . promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any image or copy thereof . . ."); see also 18 U.S.C. § 3509(m) (mandating that any property or material constituting child pornography to be kept in possession of government agency).

Further confirming that law enforcement agencies may possess and review child pornographic materials under § 2252A, the use and transmission of child pornography by law enforcement personnel in sting operations has been upheld in suits brought by defendants who have been caught by this method. See Cynthia Perez, Case Note, United States v. Jacobson: Are Child Pornography Stings Creative Law Enforcement or Entrapment?, 46 U. Miami L. Rev. 235, 245 (1991) (discussing law enforcements frequent possession, transmission, and use of child pornography

in sting operations and that every challenge to child pornography stings has been rejected).

Here, both Officer Lockard and Officer Sokol were sworn P.O.S.T.-certified law enforcement officials authorized to make arrests, execute search warrants and conduct law enforcement investigations. (Lockard Dec., ¶¶ 1-3). It is undisputed that as part of fulfilling their duties as law enforcement officials investigating potential criminal activity or conduct, School District police department officers obtained several nude photographs of Plaintiff that she reportedly sent to RH on RH's cell phone and deleted the images from RH's cell phone. (Lockard Dec., ¶¶ 4, 8-10). These photographs were only seen by Officers Lockard and Sokol and were secured in the School District police department's evidence room. (Id. at ¶¶ 10-11).  No one outside the School District's police department has seen or possessed the photographs. (Id. at ¶ 11). This is exactly the type of activity authorized by the law. See O.C.G.A. § 16-12-100(d).

Plaintiff's argument to the contrary would mean those prosecuting child pornography cases violate federal and state law themselves whenever they obtain, review, possess, or distribute pornographic materials as part of their law enforcement duties. Under Plaintiff's theory, law enforcement and court-related personnel (including attorneys representing party litigants) cannot even possess such material.

Such reading turns U.S.C. § 2252A upside down and is contrary to case law confirming not only law enforcements' handling of such material, but also court-related personnel who are undoubtedly involved in cases concerning child pornography as well. See 18 U.S.C. § 3509(m) (mandating that any property or material constituting child pornography to be kept in possession of the Government or the court); see also United States v. Lamb, 945 F. Supp. 441, 448 (N.D.N.Y. 1996) (characterizing as "sophistry" argument suggesting that because possession of [child pornography] is illegal, a law enforcement officer may not seize it or an assistant U.S. attorney may not present it as evidence in a prosecution because such privileges are "incidents of the special functions these persons perform in our justice system.").

Plaintiff's attempt to characterize Officer Lockard and Officer Sokol as merely school district "employees" – as if they were teachers or administrators rather than sworn law enforcement personnel – is spurious and in bad faith. Similarly, Plaintiff's suggestion that the School District violated federal and state child pornography laws because its police department possessed such materials likewise is meritless. Under Plaintiff's analysis, every city or county whose police department obtains and possesses child pornographic materials pursuant to its law enforcement duties is violating federal and/or state child pornography laws. It strains logic to entertain such a conclusion.

16

**B.     The School District And Its Counsel Lawfully And Appropriately Produced The Photographs At Issue To Plaintiff**

This required handling of child pornography, necessitated by cases involving such material, extends to the parties and their attorneys in connection with their official roles in judicial proceedings. In the course of judicial proceedings, production of such material occurs in discovery, and is even mandated by courts in certain instances. See United States v. Knellinger, 471 F.Supp.2d 640, 650 (E.D.Va. 2007). (Court ordered the Government to provide the defense – including an expert witness – with copies of hard drives containing copies of child pornography, subject to appropriate protective orders); United States v. Heiser, 473 Fed. Appx. 161, 163 (3d Cir. 2012) (trial court granted defendant's motion to compel production of the hard drives containing child pornography and noting government attorneys eventually provided a copy of the CD with the original child pornography to defendant).

Production of the material at issue here[4], in response to Plaintiff's document request and within the controlled parameters of the Consent Protective Order entered

---

[4]     The School District notes that "civil discovery is much broader than criminal discovery . . . Compare Fed. R. Civ. P. 26(b)(1) with 18 U.S.C. § 3500. The distinction between the two discovery protocols is not idle: criminal discovery is narrower because of concerns that criminal defendants may use this information to impede investigations into them, tamper with witnesses,

17

by the Court, is categorically different from dissemination of child pornography between or among pedophiles or the general public[5]. Plaintiff's argument, to be charitable, conceals (if not eviscerates) this distinction.

The Consent Protective Order provided for the production of the School District police department records and authorized the School District "to disclose and produce any such law enforcement records in discovery in this litigation" and that all such records "shall be treated as Confidential Information pursuant to this Order." (Doc. 65, ¶ 8).  In addition, the Consent Protective Order provides that information identified as "Confidential Information" need not be designated as "Confidential Information" by taking the steps set forth in paragraphs 10(a) and 10(b). (Id. at ¶ 10(c)). Thus, contrary to Plaintiff's contentions, the School District was not required to re-designate the photographs at issue as Confidential Information, as they already constituted Confidential Information under the terms of the Consent Protective Order.   The Consent Protective Order limits the dissemination of information identified as "Confidential Information" to attorneys

---

or craft more airtight perjured testimony." Commodity Futures Trading Comm'n v. Nowak, 19-CV-6163, 2020 WL 3050225, at *2 (N.D. Ill. June 8, 2020).

[5] This is especially true where, as here, Plaintiff created, originated, and voluntaryily transmitted the images in the first instance. In such instances, the harm is clearly distinguishable from the harm caused to children who were exploited by adults to produce child pornography.

for the parties in this case and their employees, the parties, and other specific categories of people. (Id. at ¶¶ (13(a) – 13(h)). The School District's counsel has exceeded even these obligations, as it has not provided the photographs at issue to anyone other than Plaintiff's counsel.

The civil remedies identified by Plaintiff were not enacted to allow an individual, who voluntarily created and distributed digital images of herself, which were subsequently produced in litigation in response to her own request (see Exhibit 3, Plaintiff's Request No. 51), to subsequently seek money from party litigants. Plaintiff's situation could not be more different from those individuals the civil remedies and statutes seek to protect.

Indeed, Plaintiff conveniently ignores the legislative intent of these statutes in choosing to pursue this thinly-veiled litigation tactic. In enacting Section 2252A of the Child Pornography Prevention Act, Congress addressed concerns that "child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children; such use of child pornography can desensitize the viewer to the pathology of sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer." (S. Rep. 104-358, 2 (1996)).

Here, the images were not gathered, retained, or produced for personal or commercial use. Nor was there any attempt to target the images at child pornographers or pedophiles. Rather, the materials at issue were used in the investigative process by law enforcement and produced pursuant to Plaintiff's document request by counsel representing that law enforcement body performing duties "incident of the special functions these persons perform in our justice system." <u>Lamb</u>, 945 F. Supp at 448. The statutes are aimed at pedophiles, child molesters, and sexual abusers, not school police departments gathering evidence in a sexual assault investigation or the School District complying with Plaintiff's document request.

## C.   <u>Plaintiff's Counsel Acted Improperly in Filing the Motion and Contacting the GBI</u>

Plaintiff's counsel filed the Motion without any prior discussion with the School District's counsel. In fact, counsel for Plaintiff had an extended conversation with the School District's counsel just two days before filing the Motion expressing her satisfaction with the School District's discovery responses and document production (other than one issue not related to this Motion). Instead of contacting the School District's counsel,  Plaintiff filed the Motion a few minutes before midnight and contacted the GBI to accuse the School District, its police officials and lawyers of criminal activity.

Such conduct under the circumstances of this case was improper. First, pursuant to both the Local Rules for the Northern District of Georgia and this Court's standing order regarding discovery disputes, Plaintiff's counsel should have conferred with counsel for the School District before filing the Motion. *See*, Local Rule 37.1 and Instructions for Cases Assigned to the Honorable Steve C. Jones. Plaintiff's counsel did not do so. Second, making such accusations to the GBI may well constitute the false reporting of a crime pursuant to O.C.G.A. Section 16-10-26. Finally, such conduct is violative of DR 7-105 of the Georgia Canons of Ethics governing the conduct of lawyers, which states that "[a] lawyer shall not present…or threaten to present criminal charges solely to obtain an advantage in a civil matter." Given the clear inapplicability of the child pornography statutes to the instant case, one has no choice but to conclude that Plaintiff's counsel contacted the GBI solely to obtain an advantage in this case.

## IV.   CONCLUSION

Plaintiff's Motion is without merit. Granting the Motion would create untenable and wide-ranging ramifications for all school police departments as well as other law enforcement officials. The conduct of Plaintiff's counsel is indefensible and should be sanctioned. The School District respectfully requests that the Court (1) deny Plaintiff's Motion, (2) direct Plaintiff's counsel to contact the GBI

immediately to inform the GBI that no criminal violation has occurred and  (3)

impose sanctions on Plaintiff's counsel for their conduct in this matter.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**


*\s\ Kenneth G. Menendez*
Mary Anne Ackourey
Georgia Bar No. 001555
mackourey@fmglaw.com
Kenneth G. Menendez
Georgia Bar No. 502045
kmenendez@fmglaw.com
William H. Buechner, Jr.
Georgia Bar No. 086392
bbuechner@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T:  (770) 818-0000
F:      (770) 937-9960

## **LOCAL RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that the foregoing was prepared using Times

New Roman 14 point, a font and point selection approved by Local Rule 5.1(C).


\s\ *Kenneth G. Menendez*
Kenneth G. Menendez
Georgia Bar No. 502045

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION,** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants.  Counsel of record are:

> Michael E. Kramer
> Anita K. Bala
> BUCKLEY BEAL LLP
> 600 Peachtree Street NE, Suite 3900
> Atlanta, GA 30308
>
> Douglas E. Fierberg
> Monica H. Beck
> THE FIERBERG NATIONAL LAW GROUP, PLLC
> 161 East Front Street, Suite 200
> Traverse City, MI 49684
>
> Adele P. Kimmel
> Alexandra Brodsky,
> PUBLIC JUSTICE, P.C.
> 1620 L Street, NW, Suite 630
> Washington, DC 20036

This 24th day of August, 2020.

*Kenneth G. Menendez*
Kenneth G. Menendez
Georgia Bar No. 502045